United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 23, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| *Brenmark, Inc., et al.,* | Case No. 25-36766 |
| Debtors.[1] | (Jointly Administered) |

### ORDER CONFIRMING CHAPTER 11 PLAN

On March 20, 2026, the Court conducted a hearing (the "Confirmation Hearing") to consider Confirmation of the *Debtor's First Amended Plan of Reorganization*, filed by Brenmark, Inc., *et al.*, as debtors and debtors in possession (the "Debtors") in the above-captioned case (the "Chapter 11 Cases"). As referred to herein, the "Plan" shall be the Plan attached to this Confirmation Order as **Exhibit 1**, along with all modifications referred to herein.[2] Having considered the Plan, and based on the evidence presented at the Confirmation Hearing, including the Debtors' Ballot Summary (the "Ballot Summary"), the arguments and representations of counsel, and the entire record in the Chapter 11 Cases, the Court makes the following findings of fact and conclusions of law in support of Confirmation of the Plan pursuant to Bankruptcy Rule 7052, as made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brenmark, Inc. (1199) and Taylors Fine Furniture & Mattress, LLC (7401). The Debtors' service address is 5900 North Freeway, Ste 115, Houston, TX 77076.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan attached hereto as **Exhibit 1**.

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Jurisdiction and Venue

1.     The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Confirmation of this Plan is a core matter under 28 U.S.C. § 157(b), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

### B.   Eligibility for Relief

2.     The Debtors were and continue to be eligible for relief under section 109 of the Bankruptcy Code.

### C.   Solicitation Materials and Related Matters

3.     The *Debtors' Plan of Reorganization* [ECF # 86] was filed on February 11, 2026.

4.     On February 12, 2026, the Court entered an *Order Fixing Time for Filing Objections to Confirmation of Plan; and Fixing Time for Hearing on Confirmation of Plan* [ECF # 76] (the "Solicitation Order") which, among other things, authorized the Debtors to solicit the Plan.

5.     The *Debtors' First Amended Plan of Reorganization* [ECF # 89] (the "Plan") was filed on February 13, 2026.  The dates in the Solicitation Order remain relevant for the amended Plan.

6.     Pursuant to the Solicitation Order, the Debtors served the Plan, the Solicitation Order, and Ballots on February 17, 2026. *See* ECF # 92 (*Certificate of Service*).  Service of the

solicitation materials was good and proper, and the Ballots served by the Debtors conform to Official Form 314 in accordance with the Solicitation Order.

7.      The Court finds that (i) timely and proper notice of the Confirmation Hearing, the time fixed for filing objections to Confirmation, and the time for submitting Ballots on the Plan were provided to all creditors and all parties in interest, (ii) such notice was adequate and sufficient to notify all creditors and all parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Plan, (iii) such notice complied in all respects with the procedural orders of this Court, the Bankruptcy Code, the Bankruptcy Rules and otherwise satisfied due process, and (iv) any announcements made in open court at the Confirmation Hearing do not require additional disclosures nor re-solicitation of votes under section 1126 of the Bankruptcy Code.

8.      The Debtors have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Solicitation Order, and is, therefore, entitled to the maximum protections afforded under the Bankruptcy Code.

9.      The procedures by which Ballots were received and tabulated were fair and properly conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order.  Based on the Ballots received and tabulated by the Debtors as set forth in the Ballot Summary, the Court finds that all Classes of Claims and Interests that were Impaired and entitled to vote have accepted the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, and that the Plan and Confirmation thereof are consensual pursuant to section 1191(a) of the Bankruptcy Code.

4919-0668-8152, v. 3

10. The Court makes these findings of fact and conclusions of law with respect to Confirmation of the Debtors' Plan, which is attached hereto as **Exhibit 1** and incorporated herein by reference.

**D.** **Objections to Confirmation of the Plan and Disposition Thereof**

11. Pursuant to the Solicitation Order, the Court fixed March 13, 2026, as the last day for filing and serving written objections to Confirmation of the Plan (a "Confirmation Objection") in accordance with Bankruptcy Rule 3018(a).

12. Only one Confirmation Objection, by Harris-Fort Bend Counties Municipal Utility District #3, Clear Creek Independent School District, San Jacinto Community College District, City of Houston, Montgomery County, Cypress-Fairbanks ISD, and Harris County, et al. (collectively, the "Texas Taxing Authorities") [ECF # 101], was timely filed and is resolved as set forth in this Confirmation Order.

13. To the extent any untimely Confirmation Objections were filed or raised at the Confirmation Hearing and were not withdrawn or otherwise resolved, the record demonstrates by a clear preponderance of the evidence that the Plan should be confirmed, and the Confirmation Objections should be, and hereby are, overruled.

**E.** **Confirmation Hearing**

14. On March 20, 2026, the Court held the Confirmation Hearing. At the Confirmation Hearing, the Debtors established the following record in support of confirmation of the Plan: (a) all documents identified on the Debtors' Witness and Exhibit List filed in the Chapter 11 Cases in support of confirmation; (b) all testimony and arguments of counsel at the Confirmation Hearing; (c) the Ballot Summary; (d) the entire record of the Chapter 11 Cases and the docket maintained by the clerk of the Court and/or its duly appointed agent, including,

4

without limitation, all pleadings and other documents filed, all orders entered by the Court, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, as to all of which the Court takes judicial notice; (e) the statements and argument of counsel on the record at the Confirmation Hearing; and (f) all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with Confirmation of the Plan.

**F.      Applicable Confirmation Requirements for the Consensual Plan**

15.      To confirm a consensual plan under Subchapter V, section 1191(a) of the Bankruptcy Code requires the Debtors to demonstrate by a preponderance of evidence that the Plan satisfies the provisions of Bankruptcy Code section 1129(a), with the exception of section 1129(a)(15).  *See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II),* 994 F.2d 1160, 1163-65 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").  Here, the Debtors have satisfied the burden of proof with respect to confirmation of the consensual Plan under the provisions of Subchapter V of the Bankruptcy Code.

*i.      11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11*

16.      The classification and treatment of Claims and Interests are described in Articles III and IV of the Plan, and the Plan implementation procedures are described in Article VII of the Plan.  The classification of Claims and Interests described in the Plan satisfies the standards of section 1122 of the Bankruptcy Code, and the Plan complies with the applicable provisions of section 1123 of the Bankruptcy Code.  The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied.  The Debtors have complied with the applicable provisions of the

5

Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules for the Southern District of Texas.  As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

        *ii.*       *11 U.S.C. § 1129(a)(3): Plan Proposed in Good Faith*

17.      The Debtors have proposed the Plan with the legitimate and honest purpose of restructuring its financial affairs and making distributions to Holders of Claims and Interests. The Plan has not been proposed by any means forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  The Plan is the result of good faith, arm's-length negotiations among the Debtors, Holders of Claims and Interests, and other parties in interest.  Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

        *iii.*      *11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments*

18.      Any payment made, or to be made, by the Debtors for services or for costs and expenses during or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of the Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

        *iv.*      *11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders*

19.      As required by section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identity of directors and officers proposed to serve as the directors and officers of Reorganized Debtor on and after the Effective Date.  Further, the Debtors have adequately disclosed the identities of the current directors and officers who are Insiders of the Debtors.

        *v.*      *11 U.S.C. § 1129(a)(6): Regulatory Rate Approval*

20.      The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

     *vi.*      *<u>11 U.S.C. § 1129(a)(7): Best Interest of Creditors Test</u>*

21.      The Plan adequately provides an analysis with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code, and the Court accepts the Debtors' analysis.  The Court concludes that, with respect to each Impaired Class of Claims or Interests, (a) each Holder of a Claim or Interest of such Class has either accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The requirements of section 1129(a)(7) of the Bankruptcy Code are therefore satisfied.

     *vii.*     *<u>11 U.S.C. § 1129(a)(8): Acceptance of Plan by All Classes</u>*

22.      Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each Class of Claims or Interests, such Class has either accepted the Plan or is not Impaired under the Plan.  As demonstrated in the Ballot Summary, all Classes of Claims and Interests who were entitled to vote on the Plan voted to accept the Plan, and therefore, the requirements of section 1129(a)(8) are satisfied.

     *viii.*    *<u>11 U.S.C. § 1129(a)(9): Payment of Priority Claims</u>*

23.      Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code. The Debtors' Plan complies with the requirements under section 1129(a)(9) including the requirements of 1129(a)(9)(A) with respect to claims of the kind specified in section 507(a)(2) in that all such claims have been paid or will be paid as required under sections 1129(a)(9) and 1191(e).

     *ix.*     *<u>11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan</u>*

24.      Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes

4919-0668-8152, v. 3

of claims is impaired under the plan, at least one class must have accepted the plan, without including any votes of insiders. Classes 3 and 4 voted to accept the Plan, and the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

x.   *11 U.S.C. § 1129(a)(11): Feasibility*

25.   Based on the testimony, documentary evidence and arguments presented by counsel at the Confirmation Hearing, the Court finds that the Plan adequately implements the restructuring of the Debtors' financial obligations and that the operational results needed to satisfy those obligations under the Plan are sufficiently feasible. Further, confirmation of the Plan is not likely to be followed by a chapter 7 liquidation or further need for financial restructuring by the Debtors. Accordingly, the Plan complies with section 1129(a)(11) of the Bankruptcy Code.

xi.   *11 U.S.C. § 1129(a)(12): Payment of Fees*

26.   To the extent applicable, statutory fees incurred under 28 U.S.C. § 1930 will be paid by the Reorganized Debtor and the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

xii.   *11 U.S.C. § 1129(a)(13): Retiree Benefits*

27.   There are no retiree benefits to be paid after the Effective Date under section 1129(a)(13) of the Bankruptcy Code.

xiii.   *11 U.S.C. § 1129(a)(14): Domestic Support Obligations*

28.   The Debtors are not required to pay any domestic support obligations, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

xiv.   *11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities*

29.     The Debtors are moneyed, commercial companies, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

*xv.*     *11 U.S.C. § 1129(d)*

30.     The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act.  As a result, the Plan complies with section 1129(d) of the Bankruptcy Code.

**G.     Conclusion**

31.     The Debtors have demonstrated that the Plan provisions comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including the provisions governing confirmation of consensual plans under Subchapter V of the Bankruptcy Code. Accordingly, confirmation of the Plan is reasonable and appropriate.

## II.  ORDER

Based on the findings of fact and conclusions of law, the Court has determined that the Plan should be confirmed pursuant to sections 1129 and 1191(a) of the Bankruptcy Code.  It is therefore hereby **ORDERED** that:

32.     The foregoing findings of fact and the conclusions of law constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014.  All additional findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to confirmation of the Plan, including the Court's rulings with respect to confirmation, are hereby incorporated into this Confirmation Order.  All findings of fact or conclusions of law constitute rulings of the Court and are part of this Confirmation Order and adopted as such.

4919-0668-8152, v. 3

**A.**     <u>Confirmation of the Plan and Approval of Plan Documents</u>

33.     The Plan is CONFIRMED in its entirety, and all of the terms and conditions contained in the Plan are APPROVED. The Debtors and Reorganized Debtor, as applicable, are authorized to implement the Plan in accordance with the terms and provisions of the Plan and this Confirmation Order. The Debtors are authorized to modify the Plan in accordance with Bankruptcy Code section 1193(b) without further order of the Court solely to the extent necessary to make any changes required or appropriate to implement, effectuate, and consummate the Plan and the transactions respectively contemplated under each of the foregoing.

34.     All Plan Documents necessary for Consummation of the Plan or to be executed in order to effectuate the transactions contemplated by the Plan, as applicable, are APPROVED as necessary and appropriate and are deemed part of the Plan as if fully set forth therein. The Plan and any other applicable Plan Documents have been negotiated in good faith at arm's length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms. The Plan, including all transactions contemplated by the Plan and Plan Documents, represents the exercise of the sound business judgment of the Debtors, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest.

**B.**     <u>Resolution of Confirmation Objections</u>

35.     To the extent any untimely Confirmation Objections were filed and were not withdrawn or otherwise resolved at or before the Confirmation Hearing, such Confirmation Objections are expressly overruled, except as set forth in this Confirmation Order.

36.     By agreement of the parties, the Confirmation Objection timely filed by the Texas Taxing Authorities is resolved as set forth herein. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, any Allowed Secured Tax Claims filed by the Texas Taxing Authorities shall be classified in Class 1. To the extent that the Texas Tax Code provides for interest and/or penalties with respect to any portion of the Texas Taxing Authorities' Claims (the "Tax Claims"), such interest and/or penalties shall be included in the Tax Claims until paid in full. The liens securing ad valorem taxes for prepetition and postpetition tax years shall be retained until such taxes are paid in full. Any post-petition ad valorem tax liabilities incurred by the Debtors after the Petition Date shall be paid by the Debtors in the ordinary course of business without the necessity of filing an administrative claim or request from the Court. Failure to make such payments prior to the state law delinquency date shall be an event of default under the Plan and the Texas Taxing Authorities shall be entitled to pursue collection of all amounts owed pursuant to applicable state law without further recourse of this Court. The Texas Taxing Authorities' senior secured liens shall not be primed or subordinated by any exit financing approved by the Court in conjunction with the confirmation of the Plan or otherwise.

**C.      Implementation of the Plan**

37.     Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors and Reorganized Debtor, as applicable, may take all actions as may be necessary or appropriate to affect any action described in, approved by, contemplated by, or necessary to effectuate the Plan.

38.     All such actions taken or caused to be taken consistent with the terms of the Plan and Confirmation Order, including any such actions taken prior to the entry of the Confirmation

Order, shall be deemed to have been authorized and approved by the Court without further order under any applicable laws or regulations.

39. Notwithstanding anything to the contrary in the Plan, the Reorganized Debtor shall be responsible for making distributions for Allowed Claims under the Plan. The Reorganized Debtor shall be authorized, but not be required, to submit all of its Disposable Income to the Subchapter V Trustee for distribution, and the Subchapter V Trustee shall be authorized, but not required, to supervise and control distributions to Holders of Allowed Claims and Interests under the Plan.

40. Pursuant to the Plan, the promissory notes supporting the claims of the Small Business Administration filed on the docket at Claim Nos. 7 and 9 are hereby reinstated and shall be paid monthly as obligations of the Reorganized Debtor pursuant to the terms of such notes until paid in full.

41. Distributions under the Plan shall be paid out over the sixty-month period contemplated by the Plan and shall follow the Plan Projections attached as Exhibit B to the Plan. Allowed Unsecured Claims shall receive pro rata distributions in Cash from the Disposable Income generated by the Debtors and Reorganized Debtor in the ordinary course of business, in the amount projected on Exhibit B to the Plan, until the end of the sixty-month Plan period or until the claim is paid in full, whichever occurs first. Allowed Unsecured Claims are not entitled to more than their pro rata distributions of the amounts contemplated in the Plan Projections.

**D.** **Settlement of Claims and Controversies**

42. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and

controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any distribution on account thereof.  The entry of this Confirmation Order shall constitute the Court's approval, as of the Effective Date, of each of the compromises and settlements embodied in the Plan, including the agreements regarding payments to be made pursuant to the payment schedule set forth in the Plan Projections, as set forth in the Plan Documents, and all other treatment of Claims and Interests under the Plan.  The Court concludes that all such compromises or settlements embodied within the Plan to achieve consensual confirmation are: (i) in the best interest of the Debtors, the Estate, the Reorganized Debtor, and their respective creditors and stakeholders; (ii) fair, equitable and within the range of reasonableness; and (iii) satisfy the requirements of Bankruptcy Rule 9019 and Bankruptcy Code section 1123(b)(3)(A).

**E.     Effects of Confirmation of the Plan**

43.     The provisions of the Plan, Plan Documents, and this Confirmation Order are binding on the Debtors, Reorganized Debtor, all other Holders of a Claim or Interest, each non-Debtor counterparty to an Executory Contract or Unexpired Lease, any other interested party in the Chapter 11 Cases, and each of the foregoing's respective agents, heirs, successors, and assigns, regardless of whether such Entity filed a Proof of Claim or voted to accept the Plan.

44.     Upon entry of this Confirmation Order, the Debtors, Reorganized Debtor and their respective directors and officers, agents, attorneys, and Professionals, as applicable, are authorized and directed to effect any and all actions contemplated or required by the Plan or Plan Documents.  On and after the Effective Date, the Debtors, Reorganized Debtor, and their respective directors and officers, agents, attorneys, and Professionals are authorized and directed to take all necessary and appropriate steps and corporate action to implement the terms of the

Plan, regardless of whether such actions are specifically referred to in the Plan or this Confirmation Order.

45. Except as otherwise provided by the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against or Interests in the Debtors and their Estates.

46. Except as otherwise provided in the Plan, this Confirmation Order, or separate Final Order of the Court, all injunctions or automatic stays provided for in the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date.

47. Except as otherwise provided in section 1141 of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every Holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether such Holder has voted to accept or reject the Plan.

**F.** **Vesting of Assets Free and Clear of Liens, Claims and Encumbrances**

48. Except as otherwise provided in the Plan, Plan Documents, or this Confirmation Order, all Estate Property of the Debtors, and any property acquired by either Debtors under the Plan, will vest in the Reorganized Debtor under the Plan, free and clear of all Claims, Liens, Interests, charges, and other encumbrances. On and after the Effective Date and, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or

settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**G.      Release of Liens**

49.      Except as otherwise provided in the Plan, Plan Documents, or Confirmation Order, or in any contract, instrument or other agreement or document entered into in connection with the Consummation of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Reorganized Debtor and its successors and assigns.

**H.      Continued Corporate Existence**

50.      The Debtors shall continue to exist after the Effective Date as a Reorganized Debtor in accordance with the applicable laws of the State of Texas and pursuant to its bylaws (or other formation documents) in effect prior to the Petition Date, except to the extent such bylaws (or other formation documents) are amended or restated.

51.      The Debtors shall continue to operate its business in the ordinary course as the Reorganized Debtor in accordance with the Plan and shall perform its duties in connection with the Plan.

**I.**     **<u>Provisions Related to Executory Contracts and Unexpired Leases</u>**

52.     Only those Executory Contracts and Unexpired Leases identified in Article VI of the Plan are deemed assumed pursuant to section 365 of the Bankruptcy Code.  Unless otherwise indicated or provided in a separate order of the Court, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

53.     As of the Effective Date, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are expressly assumed and assigned to the Reorganized Debtor, and such policies shall continue in full force and effect in accordance with their respective terms and applicable non-bankruptcy law, and the Reorganized Debtor shall remain liable for all obligations thereunder regardless of when such obligations arise or become due or liquidated as if the Chapter 11 Cases had not occurred.  Consistent with the foregoing, any obligations that come due under the terms of such insurance policies after the effective time of the assumption shall be deemed to arise after the Effective Date, such that the Reorganized Debtor shall not be released from any such obligations.

54.     Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that is not timely filed with the Court in accordance with the Plan will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates, or the Reorganized Debtor without the need for any objection by the Debtors, further notice to, or action, order or approval of the Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtors' Schedules or a Proof of Claim to the contrary.

4919-0668-8152, v. 3

**J.      Professional Compensation**

55.      All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be filed no later than the Professional Compensation Claim Bar Date.   Objections to Professional Compensation Claims must be filed and served on the Reorganized Debtor and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline.   The Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Court.   Allowed Professional Compensation Claims shall be paid by the Reorganized Debtor in Cash within ten (10) days of the entry of a Final Order allowing such Claims, or as otherwise provided in the payment schedule set forth in the Plan Projections attached to the Plan.

**K.      Post-Confirmation Professional Fees and Expenses**

56.      From and after the Effective Date, the Debtors and Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor.   Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**L.**      **Retention of Causes of Action**

57.      Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any Retained Causes of Action that are not being released, are expressly preserved, and constitute assets that will vest in the Reorganized Debtor. As it relates to such Retained Causes of Action, nothing in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date in accordance with any provision of the Bankruptcy Code or any non-bankruptcy law. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such Retained Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced. No Person or Entity may rely on the absence of specific reference to any Retained Cause of Action in the Plan or Plan Documents as any indication that the Debtors or Reorganized Debtor, as applicable, will not pursue any and all available Retained Causes of Action.

**M.**      **Miscellaneous Subchapter V Provisions**

58.      Upon the Effective Date of the Plan, the duties of the Subchapter V Trustee in the Debtor's Chapter 11 Cases shall terminate as provided under section 1183(c)(1) of the Bankruptcy Code; *provided*, *however*, the Subchapter V Trustee is not discharged pursuant to Bankruptcy Code section 350(a) until such time as the Court enters its final decree and closes the Chapter 11 Cases.

59.      Not later than fourteen (14) days after substantial Consummation of the Plan and occurrence of the Effective Date, the Debtors shall file with the Court and serve on the

Subchapter V Trustee, the United States Trustee, and all parties in interest a notice of the occurrence of the Effective Date pursuant to section 1183(c)(2) of the Bankruptcy Code.

60.     No later than fourteen (14) days after the Effective Date, the Reorganized Debtor shall file a motion for final decree in the Chapter 11 Cases pursuant to section 1106(a)(7) of the Bankruptcy Code and Bankruptcy Rule 3022.

61.     Not later than sixty (60) days after the Effective Date of the Plan, the Subchapter V Trustee must file a Report of No Distribution (NDR) or Final Report (TFR) in the Chapter 11 Cases.

**N.      Miscellaneous Confirmation Provisions**

62.     This Confirmation Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Unit for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, any applicable Plan Documents, and this Confirmation Order.

63.     Under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan or any applicable Plan Documents, shall not be taxed under any law imposing a stamp tax or similar tax. The appropriate state or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

4919-0668-8152, v. 3

64.     To the extent that, under applicable non-bankruptcy law, any of the actions contemplated in the Plan would otherwise require the consent or approval of the Holders of Interests in the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the Holders of Interests in the Debtors.

65.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order, and all other agreements and documents executed and delivered pursuant to the Plan, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

66.     The Debtors and Reorganized Debtor, as applicable, shall have the right, to the fullest extent permitted by section 1142 of the Bankruptcy Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate Entity to execute and deliver an instrument or perform any other act necessary to implement the Plan, the Plan Documents, or the provisions of this Confirmation Order.

67.     On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including, but not limited to, jurisdiction over the matters set forth in Article IX(E) of the Plan.

68.     If any or all of this Confirmation Order is hereafter reversed, modified, or vacated by subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Debtors or Reorganized Debtor receive written notice of any such order,

20

nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

69.     The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety.

70.     This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rule 3020(e), 6004(h), 6006(d), or 7062.

71.     In the event of any direct conflict or inconsistency between any provision of this Confirmation Order, on the one hand, and the provisions of the Plan, on the other hand, the provisions of this Confirmation Order shall govern and control. Notwithstanding the foregoing, the Reorganized Debtor may apply or move the Court for resolution of any dispute concerning the foregoing.

Signed: March 23, 2026

Jeffrey P. Norman
United States Bankruptcy Judge

4919-0668-8152, v. 3

## EXHIBIT 1

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| *Brenmark, Inc., et al.,* | Case No. 25-36766 |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

**OKIN ADAMS BARTLETT CURRY LLP**

Matthew S. Okin
Texas Bar No. 00784695
Kelley K. Edwards
Texas Bar No. 24129017
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158
Email: mokin@okinadams.com
Email: kedwards@okinadams.com

**ATTORNEYS FOR THE DEBTORS**

Dated: February 13, 2026

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brenmark, Inc. (1199) and Taylors Fine Furniture & Mattress, LLC (7401). The Debtors' service address is 5900 North Freeway, Ste 115, Houston, TX 77076.

# TABLE OF CONTENTS

Page

**ARTICLE I**. INTRODUCTION ...............................................................................................1

**ARTICLE II**.  BACKGROUND AND SUMMARY
    A. Description and History of the Debtors' Businesses .......................................2
    B. Ability to Make Future Plan Payment and Operate Without Further Reorganization ..3
    C. Liquidation Analysis .........................................................................................3
    D. Summary of Plan ...............................................................................................4

**ARTICLE III**.  CLASSIFICATION OF CLAIMS AND INTERESTS
    A. Classification in General ...................................................................................5
    B. Summary of Classification of Claims and Interests and Payment Waterfall .................5
    C. Treatment of Claims and Interests....................................................................5
    D. Special Provision Governing Unimpaired Claims ...........................................6
    E. Elimination of Vacant Classes .........................................................................6
    F. Controversy Concerning Impairment................................................................6
    G. Subordinated Claims .........................................................................................7

**ARTICLE IV**. NON-CLASSIFIED CLAIMS
    A. Administrative Claims .......................................................................................7
    B. Professional Compensation Claims ..................................................................8
    C. Priority Tax Claims...........................................................................................8

**ARTICLE V**.  ALLOWANCE AND DISALLOWANCE OF CLAIMS
    A. Claims Administration Responsibilities ..........................................................8
    B. Estimation of Claims and Interests ..................................................................9
    C. Adjustment to Claims or Interests Without Objection .....................................9
    D. Time to File Objections to Claims ...................................................................9
    E. Disallowance of Claims or Interests; Late-Filed Claims ...............................10
    F. Amendments to Claims or Interests................................................................10
    G. No Distributions Pending Allowance .............................................................10
    H. Distributions After Allowance .......................................................................11
    I. Prepetition Claims Paid Post-Petition...........................................................11

**ARTICLE VI**.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES
    A. Assumption .....................................................................................................11
    B. Rejection .........................................................................................................12
    C. Indemnification Obligations............................................................................13
    D. Preexisting Obligations to the Debtors ..........................................................13
    E. Modifications, Amendments, Supplements, or Other Agreements .................13
    F. Sublet Leases ..................................................................................................14
    G. Reservation of Rights......................................................................................14

**ARTICLE VII**.  MEANS FOR IMPLEMENTATION OF THE PLAN
    A. Corporate Existence ........................................................................................14
    B. Authority of Reorganized Debtor ...................................................................15
    C. Directors and Officers of the Reorganized Debtor .........................................15

4938-4933-0831, v. 1

D. Vesting of Assets in the Reorganized Debtor ...............................................................15
E. Preservation of Claims and Causes of Action ............................................................15
F. Corporate Action of the Debtors.................................................................................15

**ARTICLE VIII**. DISCHARGE..........................................................................................16

**ARTICLE IX**.  GENERAL PROVISIONS
A. Effective Date ...........................................................................................................16
B. Severability ..............................................................................................................16
C. Binding Effect ..........................................................................................................17
D. Incorporation of Documents by Reference ...............................................................17
E. Retention of Jurisdiction ..........................................................................................17
F. Rules of Interpretation and Construction of Terms ...................................................19
G. Computation of Time ...............................................................................................19
H. Reference to Monetary Figures ................................................................................19
I. Governing Law .........................................................................................................20

# ARTICLE I.
# INTRODUCTION

Pursuant to sections 1129, 1189 and 1190 of the Bankruptcy Code, the Debtors propose the following chapter 11 Plan of reorganization for the resolution of outstanding Claims against, Interests in, and expenses incurred by the Debtors.  Capitalized terms used but not defined in the Plan shall have the meanings ascribed to them in **Exhibit A (Defined Terms)**.

This Plan has been prepared in accordance with Subchapter V and other applicable provisions of the Bankruptcy Code and not in accordance with federal or state securities laws or other applicable non-bankruptcy laws.  This Plan is modeled on Official Form 425A (*Plan of Reorganization for Small Business Under Chapter 11*) and is designed to provide adequate information pursuant to section 1125(f) of the Bankruptcy Code to enable Holders of Claims against and Interest in the Debtors to make an informed decision whether to vote in favor of or against the Plan.  **All parties are encouraged to read this Plan in its entirety before voting to accept or reject the Plan**.

The Debtors are the Proponents of this Plan within the meaning of Bankruptcy Code section 1129.  This Plan, including any amendments, supplements, and Exhibits thereto, the accompanying Ballot form, if any, and the related materials delivered together herewith are being furnished by the Debtors to Holders of Impaired Claims and Interests pursuant to Bankruptcy Code section 1125, in connection with the solicitation by the Debtors of votes to accept or reject the Plan and the transactions as described herein.

> **The Debtors, as Proponents of the Plan, urge all Holders of Claims and Interests in Impaired Classes receiving Ballots to accept the Plan as contained herein.**

In making a decision to accept or reject the Plan, Holders of Claims and Interests must rely on their own examination of the Debtors as described herein, including the merits and risks involved.  You are encouraged to seek the advice of qualified legal counsel with respect to the legal effect of any aspect of the Plan.  In addition, Confirmation and Consummation of the Plan are subject to conditions precedent that could lead to delays in Consummation of the Plan.  There can be no assurance that each of these conditions precedent will be satisfied or waived or that the Plan will be consummated.  Even after the Effective Date, distributions under the Plan may be subject to delay so that Disputed Claims can be resolved.

The projected financial information contained herein has not been the subject of an audit, unless otherwise stated.  With the exception of historical information, future events and matters discussed herein are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such forward-looking statements are subject to risks, uncertainties and other factors which could cause actual results to differ materially.  This Plan shall not be construed to be providing any legal, business, financial or tax advice.  Each Holder of a Claim or Interest should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.  Any Person or Entity holding or trading in or otherwise purchasing, selling or transferring Claims against, Interests in or securities of the Debtors should evaluate this Plan only in light of the

1

purpose for which it was prepared.  No party is authorized by the Debtors to give any information or make any representations with respect to the Plan other than that which is contained herein.  No representation or information concerning the Debtors, their businesses or the value of their properties and assets has been authorized by the Debtors, other than as set forth herein.  Any information or representation given to obtain your acceptance or rejection of the Plan that is different from or inconsistent with the information or representations contained herein should not be relied upon by any Holders of Claims or Interests in voting on the Plan.

## ARTICLE II.
## BACKGROUND AND SUMMARY

Under Subchapter V, section 1190 of the Bankruptcy Code requires the Plan to include: (i) a brief history of the business operations of the Debtors; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtors to make payments under the proposed Plan of reorganization.

### A.     Description and History of the Debtors' Businesses

Founded in 1997, the Debtors have operated in the Greater Houston area under the assumed business names "Landmark Furniture" and "Mattresses for Less" for almost thirty years. Brenmark, Inc. is a Texas corporation formed on or about December 23, 1997. Taylors Fine Furniture & Mattress LLC is a Texas limited liability company formed on or about September 3, 2021.

A family-run business, the Debtors built their brand in a highly competitive market by offering quality furniture at affordable prices. Unlike many national furniture chains, the Debtors also maintain significant inventory on hand allowing for same-day delivery in most instances. From the original Landmark Furniture store located on I-45 in North Houston, the Debtors have expanded to include locations in Katy, Spring/The Woodlands, Webster/Clear Lake, and Champions Forest areas. A complete listing and identification of the Debtors' assets are set forth in the Schedule of Assets and Liabilities [ECFs # 52 and 54] filed in the Chapter 11 Cases.

Beginning around 2011, the Debtors' founder, Mark Taylor, began suffering from significant, life-threatening medical issues, which as of 2012 necessitated a transition in management. In 2016 the Debtors' current president, Brad Taylor, assumed managerial duties. At this time, he became aware of certain financial improprieties taken by a separate member of the managerial team. Then, in 2017, the Texas Comptroller of Public Accounts (the "Comptroller"), after the audit, determined that the Debtors owed a significant amount for past due sales tax. The resulting settlement with the Comptroller, as well as the financial damage suffered, resulted in significant financial distress for the Debtors from which they are still recovering.

Most recently, in April 2024, a jury found in favor of a former employee who had sued the Debtors for damages resulting from a workplace injury suffered in December 2020. The Debtors appealed the trial results, but, on August 21, 2025, the Texas Fourteenth Court of Appeals affirmed the judgment.

4938-4933-0831, v. 1

Prior to the Petition Date, Debtor Brenmark, Inc. and Mark Taylor, each as Borrower, executed that certain Loan Authorization Agreement, dated July 31, 2015, as may be amended (collectively the "Loan Authorization Agreement") with the U.S. Small Business Administration (the "SBA") as prepetition lender incurring certain obligations (the "Prepetition Secured Debt"). The Prepetition Secured Debt is potentially secured by substantially all assets of the Debtors. As of the Petition Date, the outstanding balance owed to the Prepetition Lender on account of the Prepetition Secured Debt is approximately $454,948.04.[2] In addition to the secured debt, Debtors have incurred unsecured debt obligations owed to various creditors, including furniture suppliers.

On the Petition date – November 9, 2025—the Debtors filed voluntary petitions for relief under chapter 11, title 11 of the Bankruptcy Code and initiated these Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. As of the petition date, the Debtors estimate $1,500,000 in liabilities, primarily consisting of SBA claims, described above, and amounts owed to vendors.

In accordance with section 1184 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession. On November 17, 2025, the United States Trustee for the Southern District of Texas appointed Tom A. Howley as the Subchapter V Trustee in this Chapter 11 Cases.

**B.**      **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

As Proponent of the Plan, Debtors must show that they will have enough Cash over the life of the Plan to make the required Plan payments and operate the Debtors' businesses. To operate its businesses and make the required Plan payments, the Debtors will continue to operate their stores in the ordinary course while closing less profitable locations.

The Debtors' financial projections, which describe the revenue generation from ordinary course sales, including applicable assumptions regarding such projections, are attached to the Plan as **Exhibit B (Plan Projections)**. As more fully set forth in **Exhibit B**, the Debtors' Plan Projections show that the Debtors will have projected Disposable Income (as defined by section 1191(d) of the Bankruptcy Code) of approximately **$754,255** for the period described in Bankruptcy Code section 1191(c)(2), as modified and extended pursuant to the Plan Projections. Distributions pursuant to the Plan shall be made quarterly and shall total approximately $150,851 annually.

In addition to the descriptions of revenue sources described herein and the Plan Projections forming the bases for distributions to creditors set forth in **Exhibit B**, the Debtors intend to continue formalizing business relationships that may ultimately supplement the Plan payments and result in a more expedited process for satisfaction of Allowed Claims and Interests. Specifically, the Debtors plan to sell vehicles no longer needed for business, close down unprofitable locations, and continue to add to their already voluminous merchandise catalogue. If successful, each of these additional business opportunities could further expedite payments under the Plan.

---

[2] The balance pursuant to Disaster Covid-19 Economic Injury SBA Loan #XXXXXX7400, is approximately $139,357.47, and the balance pursuant to SBA Loan # XXXXXX5005 is approximately $315,590.57.

3

**C.** **Liquidation Analysis**

If the Plan (or any other plan) is not confirmed, the Chapter 11 Cases may be converted to a liquidation case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee would be appointed or elected to liquidate the assets of the Debtors. The proceeds of the liquidation would be distributed to Holders of Claims and Interests of the Debtors in accordance with the priorities established by the Bankruptcy Code. To confirm the Plan, the Bankruptcy Court must find that all Holders of Claims and Membership Interests who do not accept the Plan will receive at least as much under the Plan as such Claim and Membership Interest Holders would receive in a Chapter 7 liquidation.

In light of the Debtors' history and amount of Claims against the Estate, the Debtor's liquidation analysis is relatively simple. A liquidation analysis is attached as **Exhibit C**. The Debtors have minimal cash on hand and a modest amount of receivables due to reinvesting funds into the businesses each month. The Debtor's primary assets are its furniture inventory. The SBA holds a secured claim on the majority of, if not all the Debtors' assets, including the inventory. To the extent a Chapter 7 trustee could liquidate the assets for Cash, the distributions to Holders of Claims, if any, would be substantially less than the proposed distributions under this Plan and the current Holders of Membership Interests in the Debtors would receive nothing. Conversely, this Plan proposes to pay creditors partially over the life of the Plan and allows Holders of Membership Interests to retain their equity.

Moreover, a liquidation under Chapter 7 of the Bankruptcy Code would result in a substantial diminution of the value of the interests of the creditors because of: (i) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (ii) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (iii) failure to realize any value of the Debtors' assets; (iv) the inability to utilize the work product and knowledge of the Debtors to maximize the value of the assets; and (v) the substantial delay which would elapse before creditors would receive any distribution on account of their Claims. Accordingly, the Debtors believe that the Plan is far superior to liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code.

**D.** **Summary of Plan**

On the Effective Date, Brenmark, Inc. and Taylors Fine Furniture & Mattress LLC ("Taylors") will be merged, with Taylors continuing as the surviving entity (the "Reorganized Debtor"). Both Debtors will contribute all assets and cash into the Reorganized Debtor. The transferred assets and cash shall vest in the Reorganized Debtor free and clear of all liens, except the SBA liens. The SBA liens will attach to the assets which have been transferred to the Reorganized Debtor. The Reorganized Debtor will be responsible for paying all amounts owed to the creditors under this plan and paying amounts owed under the SBA loan.

As more fully set forth herein, this Plan proposes to pay Holders of Allowed Claims and Interests from Disposable Income generated from the sale of furniture in the ordinary course of business. As soon as reasonably practicable after additional sources of payment become available,

4

such as an infusion of capital, loan proceeds, sale of assets, Cash flow from operations, or other future income, the Reorganized Debtor may use such funds to supplement the quarterly distributions set forth in the Plan Projections.

All Holders of Claims against and Interests in the Debtors should refer to Articles III and IV of this Plan for information regarding the precise treatment of their Claim or Interest and the priority of payments pursuant to the Plan.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A.      Classification in General

Except for the Claims addressed in Article IV of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

### B.      Summary of Classification of Claims and Interests and Payment Waterfall

This Plan provides for: three (3) Classes of Secured Claims; one (1) Class of Non-Priority Unsecured Claims; and one (1) Class of Membership Interests. The classification of Claims and Interests pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Allowed Secured Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2a | Allowed SBA Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 2b | Allowed Isuzu Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed Equity Interests | Impaired | Entitled to Vote |

5

4938-4933-0831, v. 1

C.      **Treatment of Claims and Interests**

1.      *Class 1* – Class 1 shall consist of the Allowed Secured Tax Claims of any taxing authority (the "Taxing Authorities") related to ad valorem taxes owed by the Debtors. The Class 1 Claims of the Taxing Authorities shall be paid in full within thirty (30) days after the Effective Date, or alternatively, within thirty (30) days after a Taxing Authority's Claim becomes an Allowed Claim.

Class 1 is Unimpaired under the Plan. Holders of Allowed Secured Tax Claims in Class 1 are deemed to accept the Plan.

2.      *Class 2a* – Class 2a shall consist of Allowed SBA Secured Claims against the Debtors. On the Effective Date, the principal balance, together with all applicable fees and interest, of the Allowed SBA Secured Claims shall be reinstated in accordance with the terms and conditions of Loan Authorization Agreement. Except to the extent that a Holder of an Allowed Class 2a Claim agrees to a less favorable treatment, Holders of Allowed Class 2a Claims shall receive monthly distributions in Cash, in the amount Debtors were paying prepetition generated by the Debtors in the ordinary course of business until such Claim is paid in full. Payment of Allowed Class 2a Claims is deducted from the Debtors' revenue on Exhibit B prior to calculating Disposable Income.

Class 2a is Unimpaired under the Plan. Holders of Allowed Claims in Class 2a are deemed to accept the Plan.

3.      *Class 2b-* Class 2b shall consist of Allowed Isuzu Secured Claims against the Debtors. On the Effective Date, the principal balance, together with all applicable fees and interest, of the Allowed Isuzu Secured Claims shall be reinstated in accordance with the terms and conditions of Loan Authorization Agreement. Except to the extent that a Holder of an Allowed Class 2b Claim agrees to a less favorable treatment, Holders of Allowed Class 2b Claims shall receive monthly distributions in Cash, in the amount Debtors were paying prepetition generated by the Debtors in the ordinary course of business until such Claim is paid in full. Payment of Allowed Class 2b Claims is deducted from the Debtors' revenue on Exhibit B prior to calculating Disposable Income.

Class 2b is Unimpaired under the Plan. Holders of Allowed Claims in Class 2b are deemed to accept the Plan

4.      *Class 3* – Class 3 shall consist of Allowed Unsecured Claims against the Debtors, including Allowed General Unsecured Claims, and Allowed Insider Unsecured Claims, if any. Except to the extent that a Holder of an Allowed Class 3 Claim agrees to a less favorable treatment, Holders of Allowed Class 3 Claims shall receive Pro Rata quarterly distributions in Cash from the Disposable Income generated by the Debtors in the ordinary course of business, as shown on Exhibit B, until such Claim is paid in full.

Class 3 is Impaired under the Plan. Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

6

4938-4933-0831, v. 1

5. *Class 4* – Class 4 shall consist of the Allowed Equity Interests in each of the Debtors. All existing equity in the Debtors will be cancelled and new equity in the Reorganized Debtor will be distributed to the Holders of Allowed Class 4 Interests. The new proportions of Equity Interests in the Reorganized Debtor shall be equally divided 50/50 between managers Mark Taylor and Brad Taylor.

Class 4 is Impaired under the Plan. Holders of Allowed Interests in Class 4 are entitled to vote to accept or reject the Plan.

**D.      Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**E.      Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan.

**F.      Controversy Concerning Impairment**

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy concerning impairment. Failure to timely file an objection in the Chapter 11 Cases shall result in such Person or Entity waiving any objection to the Impairment classifications set forth in the Plan.

**G.      Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**NON-CLASSIFIED CLAIMS**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims and Priority Tax Claims have not been classified for purposes of voting on the Plan and are therefore excluded from the Classes of Claims and Interests set forth in Article III hereof.

7

4938-4933-0831, v. 1

## A.     __Administrative Claims__

Except to the extent that Holders of Administrative Expense Claims agree to a less favorable treatment, each Holder of an Administrative Expense Claim allowed under section 503 of the Bankruptcy Code will be paid Pro Rata quarterly distributions in Cash from the Disposable Income generated by the Debtors in the ordinary course of business until such Claim is paid in full.

Except for Professional Compensation Claims, and unless previously filed, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Reorganized Debtor and the requesting party by the later of (i) thirty (30) days after the Effective Date; or (ii) thirty (30) days after the filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code or the Bankruptcy Court, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Claims that do not file and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Reorganized Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtor or any action by the Bankruptcy Court.

## B.     __Professional Compensation Claims__

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Professional Compensation Claim Bar Date. Objections to Professional Compensation Claims must be filed and served on the Reorganized Debtor and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court. Holders of Allowed Professional Compensation Claims will be paid Pro Rata quarterly distributions in Cash from the Disposable Income generated by the Debtors in the ordinary course of business until such Claim is paid in full.

In accordance with the Plan Projections attached hereto as **Exhibit B**, the Reorganized Debtor will pay Professional Compensation Claims of the Debtors' Professionals from the first quarterly distributions set forth in the Plan Projections, and up to the maximum amount set forth therein. The Debtors' Professionals shall hold such payments in trust pending the Bankruptcy Court's entry of an Order allowing the Professional Compensation Claims on a final basis. To the extent the Allowed Professional Compensation Claim is less than the amount held by the Professionals in trust, the Professionals shall apply the amounts held in trust to pay the Allowed Professional Compensation Claim in full, and any excess amounts shall be returned to the Reorganized Debtor. To the extent Professional Compensation Claims exceed the amounts

8

provided in Exhibit B, the Professionals shall receive their pro rata share of the amount shown and any excess amount shall remain an obligation of the Reorganized Debtor to be paid out of excess cash prior to the end of the Distribution Period.

## C. Priority Tax Claims

Except (a) to the extent that the Holders of Allowed Priority Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and (b) to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor on the later of (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable in accordance with the Plan Projections, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; *provided*, *however*, that the Reorganized Debtor shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

## A. Claims Administration Responsibilities

After the Effective Date, the Reorganized Debtor, with respect to all Claims and Interests, shall have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims or Interests; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Nothing contained in the Plan shall be construed to waive the Debtors' or other Person's right to object on any basis to any Claim or Interest; *provided*, *however*, that the Administrative Claims and Insider Unsecured Claims, if any, identified or otherwise provided for in the Plan Projections shall be deemed Allowed Claims under the Plan.

## B. Estimation of Claims and Interests

Before or after the Effective Date, the Debtors or Reorganized Debtor (as applicable) may at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest and any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes

9

4938-4933-0831, v. 1

under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Procedures for specific estimation hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

C.      **Adjustment to Claims or Interests Without Objection**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      **Time to File Objections to Claims**

Except as otherwise specifically provided in the Plan, any objections to Claims shall be filed on or before the later of: (i) ninety (90) days after the Effective Date, or (ii) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Chapter 11 Cases on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Chapter 11 Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. The Reorganized Debtor may request at any time that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.

E.      **Disallowance of Claims or Interests; Late-Filed Claims**

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547,

548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered.

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims unless the Bankruptcy Court, after notice and a hearing, has entered a Final Order authorizing the late filing of such Claim. If the Bankruptcy Court grants the request to file a late Allowed Unsecured Claim, such Allowed Unsecured Claim shall be treated in all respects as a Allowed Unsecured Claim in Class 3. Objections by the Reorganized Debtor to late-filed Claims shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date that is thirty (30) days after the Reorganized Debtor receives actual notice of the filing of such Claim.

## F.      Amendments to Claims or Interests

On or after the Effective Date, a Claim or Interest may not be filed or amended without the express prior authorization of the Bankruptcy Court or the Reorganized Debtor and any such new or amended Claim or Interest that is filed without such authorization shall be deemed disallowed in full and expunged without any further action.

## G.      No Distributions Pending Allowance

If any objection to a Claim or Interest or portion thereof is filed as set forth in the Plan hereof, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

## H.      Distributions After Allowance

In accordance with section 1190(2) of the Bankruptcy Code, and except as otherwise agreed by the Debtors and the Subchapter V Trustee, the Reorganized Debtor shall be authorized, but not required, to submit all of its Disposable Income to the Subchapter V Trustee on a quarterly basis for purposes of supervising and controlling distributions to Holders of Allowed Claims and Interests under the Plan.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Debtors shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**I.**     **Prepetition Claims Paid Post-Petition**

After the Petition Date, Debtors made certain payments on account of prepetition claims to Ashley Furniture, a critical supplier which refused to deliver essential inventory without payment in full of its prepetition claim. Debtors' principals made the decision to meet Ashley Furniture's payment demand without authorization. These unauthorized post-petition payments fully satisfy all prepetition amounts owed to Ashley Furniture. In exchange for Ashley Furniture's agreement to continue supplying the Reorganized Debtors on terms that are no less favorable than existed prior to the Petition Date, the Plan provides that any post-petition payments to Ashley Furniture shall be deemed to have been approved by the Court upon confirmation of the Plan.

While the Bankruptcy Code provides for the avoidance and recovery of any unauthorized post-petition payments made to Ashley Furniture, Debtors have made the business decision to forgo such rights of recovery in order to preserve the relationship with Ashley Furniture. In exercising their business judgement, the Debtors assert that maintaining Ashley Furniture as a critical supplier is more valuable going forward than any potential recovery that could be obtained by avoidance of the post-petition payments.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Assumption**

On the Effective Date, the Debtors assume the following Executory Contracts and Unexpired Leases with a Cure Claim amount of zero dollars ($0.00):

| Counterparty | Description |
| --- | --- |
| North East Trade Center | 5415 Mesa Lease Dr, Houston TX Lease- Warehouse |
| Simi Spring LLC | 21403 I-45 N, Spring, TX Lease- Taylors Fine Furniture Store Location |
| Davis Bros | 19060 Gulf Fwy, Ste #A, Friendswood, TX Lease- Brenmark Store Location |

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases set forth above pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms.

The Debtors are still reviewing their executory contracts and unexpired leases. To the extent that the Debtors decide to assume additional executory contracts or unexpired leases, the Debtors will file a plan supplement and notice of cure amounts with this Court.

Not later than thirty (30) calendar days after the Effective Date of the Plan, any counter-party to an Executory Contract or Unexpired Lease being assumed by the Debtors asserting a Cure Claim in connection with the assumption of any Executory Contract or Unexpired Lease must file such Cure Claim with the Bankruptcy Court asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any party that fails to file a Cure Claim by this deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Reorganized Debtor. The Reorganized Debtor shall have sixty (60) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the Effective Date. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## B. Rejection

Except for Executory Contracts and Unexpired Leases that have been assumed on or before the Effective Date of this Plan, the Debtors will be conclusively deemed to have rejected all Executory Contracts and Unexpired Leases as of the Effective Date.

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court not later than thirty (30) calendar days after the Effective Date of the Plan. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtor, the Estates, or their properties without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims pursuant to this Plan.

## C. Indemnification Obligations

All indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the Current Directors and Officers, managers, employees, attorneys, accountants, investment bankers, and other

13

Professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such Current Directors and Officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors than the indemnification provisions in place prior to the Effective Date; *provided*, *however*, that all indemnification obligations arising prior to the Effective Date under the foregoing indemnification provisions shall not constitute obligations of the Reorganized Debtor. For the avoidance of all doubt, all indemnification obligations of the Debtors prior to the Petition Date, whether known or unknown, asserted or assertable, shall constitute General Unsecured Claims against the Debtors' Bankruptcy Estates and shall be treated in accordance with the Plan.

**D.      Preexisting Obligations to Debtors**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the applicable Debtors or the Reorganized Debtor under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserve and do not waive any rights to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**E.      Modifications, Amendments, Supplements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

**F.      Sublet Leases**

The main store located at 5900 North Fwy, #115, Houston, Texas is leased in the name of Mark Taylor. The Debtors sublet this location from Mr. Taylor in exchange for payment of rent and use of the leased space. Upon confirmation of the Plan, the Reorganized Debtor will continue to sublet the leased space from Mr. Taylor.

**G.      Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease in the Plan, nor anything else contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such

14

Case 22-33676 Document 181 Filed in TXSB on 02/23/26 Page 40 of 59

dispute to alter the treatment of such contract or lease under the Plan.

**ARTICLE VII.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Debtors' means for implementation of this Plan are described herein.

**A.      Corporate Existence**

On the Effective Date, the Debtors shall merge with Brenmark, Inc. contributing all of its equity, assets, and cash on hand, and with Taylors Fine Furniture & Mattress LLC, as the surviving entity, continuing to exist after the Effective Date as a separate limited liability company, with all the powers of a limited liability company, as the case may be, pursuant to the  applicable law in the jurisdiction in which the Reorganized Debtor is formed and pursuant to its respective by-laws (or other formation documents) as may be amended and restated. Subject to the provisions of this Plan, including provisions for the adjustment of claims, the Reorganized Debtor shall assume all liabilities, shall be responsible for facilitating payments to creditors through the Plan, and shall pay the SBA loan in accordance with the terms of this Plan.

To the extent such corporate documents are amended or restated, they are deemed to be amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, or federal law). Neither the preparation nor the filing of the new organizational documents shall be deemed to create a new corporate or other legal Entity, and the new organizational documents shall only be deemed amendments to, or amendments and restatements of, applicable organizational documents for purposes of any change of control determination. Each Holder of Allowed Interests in Class 4 entitled to receive their respective Equity Interests in the Reorganized Debtor under the Plan shall be required, upon request by the Debtors, to execute, and agree to be bound by, such new organizational documents as may be necessary or appropriate in furtherance of consummation of the Plan.

**B.      Authority of Reorganized Debtor**

On the Effective Date, the Reorganized Debtor shall have the authority to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.  Such authority shall include, but is not limited to, soliciting purchase orders for furniture, entering into partnerships, joint ventures, and any other definitive documents with third parties which the Debtors deem necessary and appropriate, in its business judgment, to generate the future earnings and distribute the Disposable Income in accordance with the Plan and Plan Projections.

4938-4933-0831, v. 1

### C.     Directors and Officers of the Reorganized Debtor

On the Effective Date, the Current Directors and Officers Brenmark, Inc will be deemed to resign such positions, and the Current Directors and Officers of Taylors Fine Furniture & Mattress LLC shall be established as the directors and officers of the Reorganized Debtor.  Brad Taylor and Mark Taylor shall be the managers of Taylors Fine Furniture & Mattress LLC and Brad Taylor will be the President.

### D.     Vesting of Assets in the Reorganized Debtor

On the Effective Date all property in the Estates, all Retained Causes of Action, and any property acquired by the Debtors pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except those Liens granted under any agreement, instrument, or other document incorporated in or Reinstated by the Plan, including the SBA liens.

On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### E.     Preservation of Claims and Causes of Action

Except as otherwise provided in the Plan or in any other contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b)(3), the Reorganized Debtor shall retain and shall have the exclusive right, authority, and discretion to (without further order of the Bankruptcy Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any and all Retained Causes of Action that the Debtors or their Estates may hold against any Person or Entity, whether arising before or after the Petition Date.

### F.     Corporate Action of the Debtors

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (i) the assumption or rejection of any Executory Contracts and Unexpired Leases; and (ii) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtor, and any corporate action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by Holders of Membership Interests, directors, or officers of the Debtors or the Reorganized Debtor, as applicable.

16

On or after the Effective Date, the Directors and Officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor. The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

## ARTICLE VIII.
## DISCHARGE

If the Debtors' Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtors will not be discharged of any debt: (i) imposed or Reinstated by this Plan; or (ii) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Debtors' Plan is confirmed under section 1191(b) of the Bankruptcy Code, Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code. The Debtors will not be discharged from any debt: (i) on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in section 1192 of the Bankruptcy Code; or (ii) excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Bankruptcy Rule 4007(c).

## ARTICLE IX.
## GENERAL PROVISIONS

**A.     Effective Date**

The Effective Date of this Plan is the date identified by the Reorganized Debtor in a *Notice of Effective Date* that is filed on the docket of the Chapter 11 Cases. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first (1st) Business Day after the date on which the stay expires or is otherwise terminated.

**B.     Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**C.     Binding Effect**

The rights and obligations of any Person or Entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such Person or Entity.

**D.     Incorporation of Documents by Reference**

17

4938-4933-0831, v. 1

This Plan incorporates by reference certain documents relating to the Debtors that are not presented herein or delivered herewith. The documents that have been filed in the Chapter 11 Cases are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for Confirmation, including the Debtors' Schedules of Assets and Liabilities [ECFs # 52, 54] and the Debtors' Statement of Financial Affairs [ECFs # 53, 55].

## E.     Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.     Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, the Schedules of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.     Ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.     Adjudicate, decide, or resolve any motions, adversary proceedings, any other contested or litigated matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.     Adjudicate, decide, or resolve all matters related to section 1141 of the Bankruptcy Code;

7.     Enter and implement such Final Orders as may be necessary to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases and other agreements or documents created in connection with the Plan;

18

4938-4933-0831, v. 1

8.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other Final Orders, or take such other actions as may be necessary to restrain interference by any Person or Entity with respect to Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan hereof and enter such Final Orders as may be necessary to implement such releases, injunctions and other provisions;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

13.     Enter and implement such Final Orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15.     Enter an order closing the Chapter 11 Cases;

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

19

21.	Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

22.	Enforce all Final Orders previously entered by the Bankruptcy Court; and

23.	Hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, or any other term of the Plan, nothing contained in the Plan or Confirmation Order shall constitute a waiver of any party's right to a trial by jury in any adversary proceeding or contested matter, or otherwise purport to broaden the Bankruptcy Court's post-Confirmation subject matter jurisdiction.

## F.	Rules of Interpretation and Construction of Terms

For purposes of this Plan: (1) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (2) any reference in this Plan to an existing document or Exhibit filed or to be filed means that document or Exhibit as it may have been or may be amended, supplemented, or otherwise modified; (3) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (4) the words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (5) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (6) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (7) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (8) any reference to docket numbers of documents filed in the Chapter 11 Cases are references to docket numbers under the Bankruptcy Court's Case Management and Electronic Case filing (CM/ECF) system; and (9) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

## G.	Computation of Time

All times referenced in this Plan are prevailing Central Time.  In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## H.	Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## I. Governing Law

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, federal law, as applicable, including the Bankruptcy Code and the Bankruptcy Rules, or otherwise in accordance with the laws of the State of Texas.

Respectfully submitted on the 13th day of February, 2026.

**BRENMARK, INC.**

By:     /s/ *Brad Taylor*
     Brad Taylor
     President

**TAYLORS FINE FURNITURE & MATTRESS LLC**

By:     /s/ *Brad Taylor*
     Brad Taylor
     Manager

**OKIN ADAMS BARTLETT CURRY LLP**

By:     /s/ *Matthew S. Okin*
     Matthew S. Okin
     Texas Bar No. 00784695
     Email: mokin@okinadams.com
     Kelley K. Edwards
     Texas Bar No. 24129017
     Email: kedwards@okinadams.com
     1113 Vine St., Suite 240
     Houston, Texas 77002
     Tel: 713.228.4100
     Fax: 346.247.7158

**ATTORNEYS FOR THE DEBTORS**

4938-4933-0831, v. 1

## Exhibit A

## Defined Terms

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Exhibit. Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

***Administrative Claim*** or ***Administrative Expense Claims*** means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and/or in connection with operating the Debtors' businesses (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

***Administrative Claim Bar Date*** means, except as provided in Article IV of the Plan, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

***Allowed*** means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502 that: (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan; (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (iii) is expressly allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (a) a timely objection has not been filed, or (b) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

***Avoidance Actions*** means any and all actual or potential Claims and Causes of Action that have been, or may be, commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including Bankruptcy Code sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a), or under similar or related state or federal statutes and common law.

22

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, modified, and supplemented from time to time).

***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

***Bankruptcy Estate*** or ***Estate*** means the estates of the Debtors created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases, and all Estate Property comprising the estates.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and made applicable to the Chapter 11 Cases or ancillary proceedings, and the Bankruptcy Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or ancillary proceedings, as the case may be.

***Bar Date*** means March 17, 2026, the date established by the Bankruptcy Court by which Proofs of Claim must be filed with respect to such Claims, other than Administrative Claims, Claims held by governmental units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding Holders of such Claims or Interests from the requirement of filing Proofs of Claim. For the avoidance of doubt, the term "Bar Date" shall also refer to any extended deadline to file Proofs of Claim or Interest agreed to by the Debtors and the applicable party pursuant to a stipulation approved by the Bankruptcy Court.

***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Causes of Action*** means any claims, interests, damages, remedies, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. This term also includes: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

23

4938-4933-0831, v. 1

*Chapter 11 Cases* means the Chapter 11 bankruptcy cases commenced upon the filing of the voluntary petitions on the Petition Date, styled *In re Brenmark, Inc.,* Case No. 25-36766 and *In re Taylor Fine Furniture & Mattress LLC*, Case No. 25-36767. The Debtors' bankruptcy cases have been consolidated for procedural purposes only and are being jointly administered by the Court, styled *In re Brenmark, Inc., et. al.*, Case No. 25-36766. Any reference to a document or pleading filed in the Chapter 11 Cases shall mean Case No. 25-36766.

*Claim* means a claim against any portion of the Bankruptcy Estate of the Debtors, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

*Claims Register* means the official register of Claims.

*Class(es)* means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

*Confirmation* means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

*Confirmation Hearing* means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

*Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

*Consummation* means the occurrence of the Effective Date.

*Cure Claim* means a Claim based upon the Debtors' default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to Bankruptcy Code section 365.

*Current Directors and Officers* means Brad Taylor, serving as president of Brenmark, Inc. and manager of Taylors Fine Furniture & Mattress LLC and Mark Taylor, serving as manager of Brenmark, Inc. and Taylors Fine Furniture & Mattress LLC as of the Petition Date.

*Debtors* collectively mean Brenmark, Inc. and Taylors Fine Furniture & Mattress LLC.

*Disposable Income* means, as defined in section 1191(d) of the Bankruptcy Code, the income that is received by the Debtors and that is not reasonably necessary to be expended for the maintenance or support of the debtor, or for the payment of expenditures necessary for the continuation, preservation, or operation of the businesses of the Debtors.

*Disputed Claim* means a Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law, or an Administrative Claim, and to which an objection has been filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, and such objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that: (a) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the applicable Debtors in the Schedules of Assets and Liabilities; (b) any corresponding Claim

24

scheduled by the applicable Debtors in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (c) no corresponding Claim has been scheduled by the applicable Debtors in the Schedules of Assets and Liabilities; or (d) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

***Effective Date*** means the date that is the first Business Day after the Confirmation Date, on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

***Entity*** means any Person, estate, trust, governmental unit, or United States trustee, as set forth in Bankruptcy Code section 101(15).

***Estate Property*** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtors or their Estate on the Petition Date pursuant to, and as defined by, Bankruptcy Code section 541.

***Executory Contract*** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which the Debtors are a party or beneficiary.

***Exhibit*** means an exhibit annexed to the Plan, as may be amended, modified or supplemented.

***Final Order*** means an order or judgment of the Bankruptcy Court, or another court of competent jurisdiction, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

***General Unsecured Claim*** means an Unsecured Claim held by a party other than an Insider that is not: (a) an Administrative Claim; (b) a Professional Compensation Claim; (c) a Priority Tax Claim; or (d) a Priority Non-Tax Claim.

***Holder*** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtors or as otherwise determined by order of the Bankruptcy Court.

***Impaired*** or ***Impairment*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

***Insider*** has the meaning set forth in Bankruptcy Code section 101(31).

***Insider Unsecured Claim*** means an Unsecured Claim held by an Insider, including, for the

25

avoidance of doubt, any Unsecured Claims asserted or assertable by the Debtor's president or managers, Brad Taylor or Mark Taylor.

*Interest*, *Equity Interest*, or *Membership Interest* means any ownership interest in a Debtors, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

*Lien* means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

*Person* means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

*Petition Date* means November 9, 2026, the date on which the voluntary Chapter 11 Cases were filed.

*Plan* means the Debtors' Chapter 11 Plan of Reorganization, as such document may be amended, modified or supplemented from time to time.

*Plan Documents* means, collectively: (i) those documents, Exhibits, Schedules and forms thereof in furtherance of Confirmation and Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which shall be filed by the Debtors with the Bankruptcy Court as soon as reasonably practicable prior to the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court; and (ii) any additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to such previously filed Plan Documents.

*Plan Projections* means the Debtors' financial projections describing the revenue generation and calculations of Disposable Income to be distributed pursuant to the Plan, all as more fully set forth in **Exhibit B** to the Plan.

*Prepetition Loan Documents* means those certain notes and instruments executed by the Debtors in favor of the SBA, together with all other documents, instruments, agreements and amendments executed and/or delivered in connection with the foregoing.

*Priority Non-Tax Claim* means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

*Priority Tax Claim* means a Claim asserted under Bankruptcy Code section 507(a)(8).

*Pro Rata* means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

26

4938-4933-0831, v. 1

*Professional* means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. For the avoidance of doubt, this term includes, but is not limited to, Professionals employed by the Debtors.

*Professional Compensation Claim* means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

*Professional Compensation Claim Bar Date* means, except as provided in Article IV of the Plan, forty-five (45) days after the Effective Date.

*Professional Compensation Claim Objection Deadline* means twenty-one (21) days after the Professional Compensation Claim Bar Date.

*Proponent* means the Debtors.

*Proof of Claim* means a proof of Claim filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

*Reinstate*, *Reinstated*, or *Reinstatement* means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

*Reorganized Debtor* means, on or after the Effective Date, the Debtors or any successors or assigns, by merger, consolidation, or otherwise.

*Retained Causes of Action* means all Causes of Action held by the Debtors' Estates against third parties, including for the avoidance of doubt, any potential Avoidance Actions set forth on the Schedule of Retained Causes of Action.

*Schedule of Assets and Liabilities* means the schedules of assets and liabilities [ECFs # 52, 54] filed by the Debtors in the Chapter 11 Cases, as may be amended, modified, or supplemented.

*Schedule of Retained Causes of Action* means the Retained Causes of Action set forth on the schedule to be filed as an Exhibit to the Plan.

*Secured Claim* means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

*Subchapter V Trustee* means Tom A. Howley, in his capacity as trustee pursuant to section 1183(a) of the Bankruptcy Code and as appointed by the United States Trustee in the Debtors' Chapter 11 Cases.

4938-4933-0831, v. 1

***Subordinated Claim*** means a Claim that is subordinated to General Unsecured Claims pursuant to (a) a contract or agreement, (b) a Final Order declaring that such Claim is subordinated in right or payment, or (c) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law. Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

***Unexpired Lease*** means a lease to which the either Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9). The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against the Debtors to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

[*Remainder of Page Intentionally Left Blank*]

4938-4933-0831, v. 1

29

**Exhibit B**

**Plan Projections**

4938-4933-0831, v. 1

Debtor Name: Brenmark Inc., et al        **Form 11-11**        Case No.25-36766

**United States Bankruptcy Court**
**Southern District of Texas**
**Houston Division**

**BRENMARK INC & TAYLORS FINE FURNITURE**

| Ordinary Income/Expenses | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 | Total |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| Total Revenue | $ 5,937,995 | $ 5,937,995 | $ 5,937,995 | $ 5,937,995 | $ 5,937,995 | $ 29,689,975 |
| | | | | | | |
| **Expenses** | | | | | | |
| Inventory | 3,087,757 | 3,087,757 | 3,087,757 | 3,087,757 | 3,087,757 | 15,438,785 |
| Office Lease/Bldg Payment | 859,364 | 859,364 | 859,364 | 859,364 | 859,364 | 4,296,820 |
| Employee Payroll | 712,651 | 712,651 | 712,651 | 712,651 | 712,651 | 3,563,255 |
| Officers- Sales and Executive | 417,400 | 417,400 | 417,400 | 417,400 | 417,400 | 2,087,000 |
| Utilities | 103,000 | 103,000 | 103,000 | 103,000 | 103,000 | 515,000 |
| Officer- Admin | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 500,000 |
| Insurance | 73,500 | 73,500 | 73,500 | 73,500 | 73,500 | 367,500 |
| Supplies | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 300,000 |
| Fuel | 45,000 | 45,000 | 45,000 | 45,000 | 45,000 | 225,000 |
| Payroll Taxes | 45,000 | 45,000 | 45,000 | 45,000 | 45,000 | 225,000 |
| CPA Fees | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 235,000 |
| Merchant Fees | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 300,000 |
| Taxes & Licenses | 34,500 | 34,500 | 34,500 | 34,500 | 34,500 | 172,500 |
| Telephone /Internet | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 135,000 |
| Advertising & Promotion | 23,400 | 23,400 | 23,400 | 23,400 | 23,400 | 117,000 |
| Bank Service Charges | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 80,000 |
| Repairs & Maintenance | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 150,000 |
| Dues & Subscriptions | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 55,000 |
| Trash | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 45,000 |
| Payroll Service Fee | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Other Operating Expenses | 6,150 | 6,150 | 6,150 | 6,150 | 6,150 | 30,750 |
| Warranty Expense | 6,800 | 6,800 | 6,800 | 6,800 | 6,800 | 34,000 |
| Computer & Software | 6,550 | 6,550 | 6,550 | 6,550 | 6,550 | 32,750 |
| Security Expenses | 1,072 | 1,072 | 1,072 | 1,072 | 1,072 | 5,360 |
| **Total Expenses:** | (5,787,144) | (5,787,144) | (5,787,144) | (5,787,144) | (5,787,144) | (28,935,720) |
| **Net Operating Income:** | $ 150,851 | $ 150,851 | $ 150,851 | $ 150,851 | $ 150,851 | $ 754,255 |

Case 25-36766 Document 113-1 Filed in TXSB on 02/23/26 Page 56 of 59

**Debtor Name: Brenmark Inc., et al**   **Form 11-11**   Case No.25-36766

**United States Bankruptcy Court**
**Southern District of Texas**
**Houston Division**

| Plan Payments | | | | | | |
|---|---|---|---|---|---|---|

**Priority Tax Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Class 1:** Allowed Secured Tax Claims | $ 3,364.25 | $ - | $ - | $ - | $ - | $ 3,364.25 |

**Secured Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Class 2a:** Allowed SBA Secured Claims | $ 59,604.00 | $ 59,604.00 | $ 59,604.00 | $ 59,604.00 | $ 59,604.00 | $ 298,020.00 |
| **Class 2b:** Allowed Isuzu Financing Claims | $ 58,480.20 | $ 58,480.20 | $ 9,504.36 | | | $ 126,464.76 |

**Allowed General Unsecured Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Class 3:** Allowed Unsecured Payments | $ - | | | $ 90,766.06 | $ 91,246.90 | $ 182,012.96 |
| **Class 4:** Allowed Equity Interests | $ - | $ - | $ - | $ - | $ - | $ - |

**Non-Classified Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Administrative Claims** | $ - | $ - | $ 58,792.53 | | | $ 58,792.53 |
| **Professional Compensation Claims** | $ 29,402.45 | $ 32,766.70 | $ 22,950.01 | $ 480.84 | $ - | $ 85,600.00 |

**Priority Tax Claims**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Total: Annual Plan Payments:** | $ 150,850.90 | $ 150,850.90 | $ 150,850.90 | $ 150,850.90 | $ 150,850.90 | $ 754,254.50 |
| **Net Profit after Plan Payments:** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.01 |

Date:2/13/26

*/s/ Brad Taylor*
Debtor's Representative

**Exhibit C**

**Liquidation Analysis**

4938-4933-0831, v. 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| In re: | | Chapter 11 | |
| *Brenmark, Inc., et al.,* | | Case No. 25-36766 | |
| Debtors.[1] | | (Jointly Administered) | |

## LIQUIDATION ANALYSIS

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor(s) assets. As set forth in the Plan, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full, with interest. This also satisfies the requirements of § 1129(a)(7).

Holders of general unsecured claims are forecast to receive a dividend of 33% of their allowed claim. The Debtors have estimated that its assets, after payment of liens would generate the following amounts in a chapter 7 liquidation:

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|---|
| Cash & Cash Equivalents | $80,830 | | | $80,830 | Bank Available Balance |
| Finished Goods Inventory | $464,462 | $443,075 | | $21,387 | Provided by Debtor |
| Prepaid Expenses | $59,067 | | | $59,067 | Lease Deposits |
| Net Fixed Assets | $0 | | | $0 | Book Value $175,971 |
| Goodwill | $0 | | | $0 | |
| **TOTAL** | | | | **$161,284** | |

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brenmark, Inc. (1199) and Taylors Fine Furniture & Mattress, LLC (7401). The Debtors' service address is 5900 North Freeway, Ste 115, Houston, TX 77076.

In a chapter 7 liquidation, the estimated liquidation value of $161,284 be applied to the chapter 7 Trustee's fees and expenses and then to administrative claims, professional claims, and priority claims. This would produce the following:

| | |
|---|---:|
| Liquidation Value | $161,284 |
| Estimated Trustee's Fees and expenses | $11,314.20 |
| Administrative Claims | $58,792.53 |
| Professional Claim- Okin Adams | $70,000 |
| Professional Claim- HRSS | $15,600 |
| Estimated priority claims | $0 |
| Total available for holders of unsecured claims | $5,577.27 |
| Estimated unsecured claims | $1,200,000 |
| Estimated percentage recovery in liquidation | 0.46% |

Because the plan forecasts to pay holders of unsecured claims 16% of the amount of their claims and a chapter 7 liquidation is forecast to pay 0.46%, this Plan satisfies the liquidation test as to holders of unsecured claims.

Respectfully submitted on this 13th day of February, 2026.

OKIN ADAMS BARTLETT CURRY LLP

By:      /s/ *Matthew S. Okin*
　　　　Matthew S. Okin
　　　　Texas Bar No. 00784695
　　　　Email: mokin@okinadams.com
　　　　Kelley K. Edwards
　　　　Texas Bar No. 24129017
　　　　Email: kedwards@okinadams.com
　　　　1113 Vine St., Suite 240
　　　　Houston, Texas 77002
　　　　Tel: 713.228.4100
　　　　Fax: 346.247.7158

ATTORNEYS FOR THE DEBTORS

4937-5137-0127, v. 2